# Fox *v.* Fisk.

Where notes of hand and accounts had been transferred, from the collections of which to pay a debt, the balance to be accounted for, it was held that an action for money had and received for over payments, would not lie without proof of actual collections; and the fact that the claims might have been collected was not sufficient, in absence of proof, that the money had been received.

Where an agent appointed with powers only to collect a debt, and proceeding under instructions, receives claims on third persons in liquidation, with an agreement to collect and refund the overplus, and the debtor had knowledge of the extent of the agent's powers, the principal is not bound for the overplus, nor diligence in the collection.

If a party dealing with an agent elects to take the responsibility of the agent, he cannot look to the principal.

In order to bring an account within the exception of the statute of limitations, as relating to the trade of merchandize, the parties must both be merchants at the time the cause of action accrued, the account must be unsettled and mutual, consisting of debts and credits, and have originated for articles of merchandize.

It is not a valid objection to an answer to a bill of discovery to be read in a trial at law, that it contains a statement of the substance of correspondence relating to the controversy, where the correspondence itself is made a part of the answer.

IN ERROR from the circuit court of the county of Adams. Trial before the Hon. C. C. Cage, at the June term, 1841.

This was an action of *indebitatus* assumpsit, instituted by Abraham Fox, the defendant in error, against Alvarez Fisk, the plaintiff in error, as the surviving partner of A. Fisk & Co. The declaration contained a count for goods, wares and merchandize, and the common money counts. There was also a bill of particulars, showing the cause of action.

It appeared that Fox was indebted to A. Fisk & Co. in the sum of about three thousand dollars, and being a citizen of the state of Tennessee, and in embarrassed and failing circumstances, wrote to Fisk & Co. who were merchants, residing in New Orleans, in

1828, to send an agent to adjust their claims against him, which they accordingly did. The agent who was sent, substituted another agent in his place, and the amount claimed by this suit, was for overpayments made to this agent in goods, cotton, promissory notes, open accounts, officers' receipts, together with some items of cash, amounting in all to the sum of seven thousand three hundred and seventeen dollars and thirteen cents, including interest.

The defendant pleaded non-assumpsit, payment, and the statute of limitations, that the cause of action did not accrue within six years before the commencement of the suit. To the last plea there was a replication, "that the said several sums of money in the said several promises and undertakings aforesaid in the said declaration mentioned, at the time of the making thereof, became due and payable to the said plaintiff on trade had between them the said plaintiff and the said A. Fisk & Co., as merchants, and wholly concerned the trade of merchandize."

Caldwell, the agent appointed by Fisk & Co. to receive payment of Fox, proceeded under written instructions, which directed him to "urge the shipment of all the cotton Fox can procure, and for whatever probable balance there may be due us, to obtain the best security he can give, taking care not to commit any act by which our responsibilities might be increased. It is difficult for us to give any very particular instructions, and as you will be better acquainted with Mr. Fox's affairs after you arrive at Shannonville, than we now are, it will be necessary for you to act in part your own discretion, *taking care to do things safely and snugly.* We also hand you our invoice of sundry goods, shipped to Mr. Fox lately, and which he says he will subject to our order. You will please to receive the goods, unless he has the means to secure the payment for them, and to place them in the hands of Mr. Hugh Findley, to be sold on our account." These instructions were dated May 12, 1828. Fisk & Co. on the same day addressed a letter to Fox, in which they say, "by your recommendation, we have sent up our friend, Mr. J. R. Caldwell, to take charge of our interest with you, and he is authorized to make settlement of our account with you. Should you not have sufficient cotton or ready funds to satisfy our claim, we hope you will be able to transfer to

him good notes, or goods at a sound value, and his receipt shall be binding on us. Mr. Caldwell will also hand you our account current with you, with interest account to this day, balance in our favor, thirty-two hundred and twenty-two dollars, seventeen hundredths." Caldwell proceeded to Shannonville, Tennessee, the residence of Fox, with letters of introduction to Fox, and one Findley. Caldwell procured two assignments of certain effects from Fox to Findley, to secure the debt to Fisk & Co. On the 28th of June, Fox wrote Fisk & Co. acknowledging the correctness of their account current.

Caldwell appointed Findley as an agent to close the business. It was contended in argument that he had no authority to substitute another agent. There was an answer to a bill of discovery by Fisk, who denied that Findley was his agent for any thing more than to collect the debt due from Fox, and had no authority to sign as the agent of Fisk & Co. He further stated that Caldwell's agency did not extend beyond a power to collect his debt against Fox.

In the assignment of property, notes, accounts, &c. to Findley to secure the debt, he acknowledged the receipt of certain "articles to be collected by him for the payment of A. Fisk & Co.'s claim against Fox, which, when satisfied, I bind myself to return (if any) the residue to said Fox." By the bill of particulars filed with the declaration, Fisk was charged with sundry notes of hand, without naming them, delivered to his agent by Elliott & Co., amounting to eight hundred and forty-four dollars; also, with sundry book accounts on sundry persons, delivered by the same persons to the agent, amounting to thirty-five hundred and thirty-three dollars and eighty-four cents; also, with three shares of stock in the steamboat company, three hundred dollars; and, also, with sundry receipts received by the agent, given by officers for claims for collection, amounting to six hundred and four dollars and thirty-four cents."

There was no proof that the goods or other articles assigned to Findley were received at value, as a payment of Fisk's claim, nor that any effects were converted into money by Findley, or that any proceeds came to his hands exceeding one hundred dollars, except what was credited on Fisk's account. There was no proof

Fox *v.* Fisk.

that any amount, except the steamboat stock, was ever realized by A. Fisk & Co., except what was credited. The liability was placed principally upon the ground of the laches of the agent in not collecting.

Portions of Fisk's answer to the bill of discovery were excluded by the court below, to wit: a statement of the substance of letters received, which letters were appended to the answer, which was made the ground of an exception. Other questions were raised on the trial, but are not involved in the opinion of the court.

The court instructed the jury "that if they believed, from the evidence, that the property and notes may have been converted into money by the agent of A. Fisk & Co., they may presume such to have been the case, and in such case an action like this is the proper remedy." Other instructions were also made the ground of exceptions, but are not embraced in the opinion. There was a motion for a new trial, which was overruled, and exceptions taken. The verdict and judgment of the court below were for the plaintiff, in the sum of eight thousand dollars.

McMurran for plaintiff in error.

We maintain that A. Fisk & Co. never were liable for the cotton, goods, and choses in action, received by H. Findley from Fox, the nominal amount of which at the time is sought to be recovered in this action, except so far as any proceeds were actually received by A. Fisk & Co., and every dollar of which was credited on the debt, as received by them; that Findley was *not* the agent of Fisk & Co. in the assignment which Fox made *to him* for the purpose of securing and ultimately paying, as it was supposed at the time, the debt of thirty-two hundred and twenty-two dollars and seventeen cents, due by Fox to Fisk & Co. on the 12th May, 1828, as acknowledged by Fox in his letter of June of the same year.

It is not pretended by the opposite counsel that Fisk & Co. by any express authority, in letter or other writing, conferred on Findley the agency contended for by the opposite counsel; but they insist that Fisk & Co. ratified the acts and agency of Findley to all the extent necessary to charge them for the full amount of every article received by Findley under Fox's assignment to him. Now

bear in mind the situation of these parties. Fisk & Co. reside in New Orleans, one thousand miles from Fox and Findley, both of whom reside at Florence, Alabama, and the former of whom had the remains of a store at Shannonville. When Fox, through Hay, on the 1st May, 1828, informs them of his situation, and requests them to come up or send up and have their account secured, they deputed John R. Caldwell, and confer on him the sole power to arrange the debt, but not to increase their responsibility; and that if he thought it for the best, he might even *take goods in payment at a sound value.* This was the extent of his authority. He had no power of substitution. And it cannot be gravely contended that under this authority Caldwell himself could do more than extinguish Fisk & Co.'s debt, by taking back the lot of goods of four hundred and fifty-six dollars and twenty-five cents, as invoiced and recently shipped to Fox, in receiving the money, or receiving goods at a fair value to the extent of the debt, but no farther. The language of the letter of instructions, and the letter by Caldwell to Fox, and the sole, specific object of Caldwell's journey and agency, show this. And the law on this subject is laid down so fully and handsomely in Story on Agency, that we will refer to that work alone as sufficient authority upon this subject. It was a most strict and special agency. Story on Agency, 18, 22, sec. 17, sec. 21; do. p. 62, sec. 62; do. p. 77, sec. 83; 8 Wend. R. 494, Reosseter *v.* Reosseter.

After Caldwell had repaired to Florence and accomplished what he could for the settlement of the debt due by Fox, he, on the *second of June,* 1828, writes to Fisk & Co. that, finding that Kennedy, Elliot & Co. had a deed of assignment from Fox to secure a debt due to H. R. Lee & Co., and that they would not make themselves liable for any other claim than that of Lee & Co., *he got from Fox a second deed of assignment to Findley,* also an order to deliver to Findley the invoiced goods of four hundred and fifty-six dollars and twenty-five cents. On the *tenth* June, 1828, Fox writes to Fisk & Co. acknowledging the correctness of the account as stated—thirty-two hundred and twenty-two dollars and seventeen cents. He then states, "*I have made an assignment with Hugh Findley to such an amount of notes and accounts and property as will secure you from loss.* I have also given to Mr.

Fox *v.* Fisk.

Caldwell an order to Mr. Hay" for the invoice goods of four hundred and fifty-six dollars and twenty-five cents, bagging and rope on hand, &c. Caldwell in his letter of July 24, 1828, reiterates what he had communicated in his former letter, that Kennedy, Elliot & Co. had 'agreed to deliver over the residue of the effects to any person *Fox would appoint;* and that he had *got a deed of assignment from Fox to Findley* for the residue of the effects, notes of hand, book accounts, notes, valuable lots, &c.

Now, these letters to Fisk & Co., and the only information they had at the time, contain not a shadow of intelligence to them, that Findley had become their agent in this *"deed of assignment,"* and that Fisk & Co. were to be held for the amount of all the goods, lots, and choses in action contained in that assignment. He is not treated as an agent of Fisk & Co., he is not named as such, he is not hinted at as such. The deed is made *to Findley alone and individually.* If it had been designed to bind Fisk & Co. for its contents, it would have been made to *them; they would have been the assignees, and so named in this assignment.*

Then do the letters of Findley to Fisk & Co. change this position of the parties? In his first letter to Caldwell, of 22d Aug. 1828, he states that all he had then got was the invoice of four hundred and fifty-six dollars and twenty-five cents. His next letter of the 3d Dec. 1828, says in regard to the claims held by him against Fox, he thought them in a fair way to be liquidated, having taken Fox's establishment at Shannonville into his own hands, and opened a retail and dry good store there, *in which capacity* his young man is impowered and has instructions to purchase cotton by taking in Fox's claims and paying the balance in money; that the remnant of goods was not *venduing,* and *Fox thought also,* and would not sacrifice unless Fisk & Co. should so instruct.

Fisk & Co. reply on the 15th Dec. 1828, and tell Findley *as to their claims against Fox* now in his hands, to act with it in the same manner as if his own, and when collections are made to remit, and to add one hundred dollars to the account against Fox on account of Caldwell's expenses.

Now who can draw or torture from this correspondence any thing more than that Findley, under the assignment, and under

Vol. VI.—29

Fox *v.* Fisk.

an agreement with Fox, renting his store, &c. addresed Fisk & Co. that through the means he stated, he expected to collect the debt due to Fisk & Co., and that it never was designed to involve Fisk & Co. to the amount of a dollar in these transactions of Findley and Fox. Findley speaks of Fisk & Co.'s claim against Fox, and Fisk & Co. tell him to collect that as he would his own.

In half the letters we receive enclosing claims for collection, our correspondent desires us to do with them as with our own. Would this sanction any extent of acts on the part of us in taking an assignment of claims collaterally, or taking a store, &c. and thereby involve our correspondent with his debtor to any amount, for it might just as well be $100,000 as $8,000, the verdict in this case?

Findley, then, was not the agent of A. Fisk & Co. except to hold and receive the amount of their claim. Whether Fox had paid Findley $50,000, in cash, or in goods, notes, &c. to secure this claim, *Fisk & Co. could be bound only to the extent of the satisfaction of their claim.* Thus when Findley sent the certificate of stock to Fisk & Co. they were liable for the proceeds of it, but nothing further.

Findley, then, was the *assignee of Fox, appointed by him by a deed of assignment;* and how—by what legerdemain is Findley to be thrust out of this deed at this late day, and Fisk & Co. inserted in his place? for this must be done before they can be made the assignee, and Findley called their agent, even in form. And as assignee, Findley was the agent of Fox as to the property assigned, and his accountability was to both Fox and Fisk & Co. to the extent of their interests. He was bound to account, as a mutual trustee, to Fisk & Co. out of the proceeds to the extent of their debt, and to Fox for the residue. Deeds of trust, and deeds of assignment by debtors to secure creditors are familiar to all of us, and the law in regard to the respective rights and liabilities of the parties is too well settled to require any reference. The counsel admits that the cotton shipped under the assignment to Fisk & Co. was at Fox's risk till sold, and proceeds received by Fisk & Co.

Again. Does this correspondence show that Findley was to be considered the agent of Fisk & Co., and they liable for his acts, under this assignment? It shows the reverse. If there was the

slightest pretence in the testimony for such a position, we would then cite from Story on Agency again, to show that before a man's words or acts shall be construed as a ratification of the acts of a third person as his own, he must have a full knowledge of the acts and of all the circumstances. Story on Agency, 80, sec. 87; Ib. 234, sec. 239, Ib. 238, sec. 234.

In connection with this take the positive testimony of Fisk in answer to the petition of discovery, and no man can doubt for a moment upon this question. And what other proof is attempted? The depositions of Hay, Hoslip, and Caldwell. And they derive their statements from *rumor*, and from the sayings of Findley and Fox made *twelve or fourteen years ago*, reported *now* from frail memory. Admit that Findley was considered the agent of Fisk & Co., and that determines nothing. Does that settle the agency to be unlimited, unreserved? No. The court will resort to the acts of Fisk & Co. and Fox at the time, and to the written correspondence at the time, and determine the nature and extent of this agency as we have already done.

But where is this deed of assignment of Fox to Findley? What has become of it? It was delivered up to Fox by Findley; such is the proof. On the *9th March* 1829, Hay writes on behalf of Fox, and he says in his deposition that he was authorized to write that letter marked N, and stated that he had had the management of Mr. Fox's business *since H. Findley became his, Fox's* assignee, &c.; he then goes on among other things to state that *"Mr. Findley had agreed with Mr. Fox to give him the assignment*, and to charge him nothing for his services as a commission merchant,"* &c.; and the reason stated why Fox wished *to get the assignment* was, for the purpose of getting a similar one to his other creditors, &c.

Findley also writes to Fisk & Co. on the 11th March 1829, stating that *Fox was extremely anxious to extinguish the assignment*, and to do this he wants them to send him the situation of their account, &c.

Well, on the *20th of the same March* 1829, *upwards of nine months after the making of the deed of assignment*, Findley gives to Fox a receipt, specifying what he held for Fisk's debt, how he was to account for the same, &c., and this receipt does

*not* embrace the merchandize estimated at $709 41–100; *nor* the list of notes, $844 53–100, nor the list of loose accounts, amounting to $3,533 48–100, which constituted half of the sums or more, upon which the jury predicated their verdict against Fisk.

The deed was given up, and a new arrangement was made between Fox and Findlay. This receipt shows it; it does not embrace the lots in Tuscumbia and Shannonville, nor the book accounts, notes, and merchandize. The assignment returned to Fox, takes these with it; and if Findley were living, or if his papers had not all been lost by a fire, we have no doubt that the receipt that Fox gave him as the evidence of his settlement would show a voucher from Fox for the return, of whatever the receipt of Findley, given at this date, did not contain.

Whoever will read this receipt and will then say that it squints at any thing of agency on the part of Findley for Fisk & Co., with regard to their liability for the effects contained in it, we should not be willing to consider him in his senses.

Now it is either under the deed of assignment or this important receipt, that Fisk is attempted to be held liable in an action of indebitatus assumpsit, for *goods, wares and merchandize,* and for *money had and received.* Fisk is to be liable in an action in this form, under a deed of an assignment, a receipt, an agreement between Fox and Findley (Fox's assignee), that he was out of the proceeds to pay Fox's debt to Fisk & Co., and return the residue to Fox; and this too without ever showing that there was any residue, that any sums of money ever were realized, and in fact Fisk & Co's. account furnished Fox, at his instance, in 1835, showing that there was then due still by Fox to Fisk & Co. three thousand seven hundred and fifty dollars; for Fox received this account and letter, acquiesced in their correctness, never objected to them, read them in evidence to the jury.

Why, Findley himself could not be held liable in this form of action, without showing that he had collected the funds and turned *into* money, the property.

The authorities cited in Comyn on Contracts, pages 324 et seq. show this. To sustain indebitatus assumpsit, there must be a payment, the debt the chose in action must be extinguished, and

converted by the defendant into money or its equivalent, before the count for money had and received will avail.   See also Comyn on Con. 327.

Again, if indebitatus for money had and received would lie as contended for, it would not concern the trade of merchandize between merchant and merchant, and the statute of limitations would be a clear bar, under this view of the case.   Ang. on Lien, 199, 200; 4 Mod. 105; 6 Pet. 165, 166.

No.   It was a special contract between Fox and Findley.   Findley agreed to take the cotton, &c. for a specific purpose, and to return any surplus to Fox.   If Fox can recover even of Findley, it would be in a special action in the case upon this contract.   The case of Robertson *v.* Lynch, 18 John. Rep. 451, is conclusive on this point.   We may also cite 14 John. Rep. 326; 11 Wheat. Rep. 239.

The special count too on this contract would show the fallacy of the doctrine contended for by the opposite counsel, as well as the error of the court in giving the first instruction asked by Fox's counsel: That if the jury believed that the property and notes *may* have been converted into money by the agent of A. Fisk & Co., they *may* presume such to be the case, and in such a case an action like this is the proper remedy.

This instruction leaves it not to the belief of a jury, but to the most idle and loose presumptions.   Besides, the proof does not show the least ground for any such presumptions.

Again, if the party were compelled to resort to their special action of the case, as we believe they must, it would at once illustrate the fallacy of the attempt to save the plaintiff, Fox's, pretended claim from the operation of the statute of limitations, on the ground that his account sued on is an account between merchant and merchant, concerning the trade of merchandize.

There is nothing in the nature of the claim of Fox, to exempt it from this statute.   Fisk & Co's. account had been closed, stated—the assignment was made to Findley to pay it, and can that assignment be, in any shape or possible contingency, an account between merchant and merchant, concerning the trade of merchandize?   Will the payments on that account stated, and the

29*

isolated sum of one hundred dollars of Caldwell's expenses assumed by Fox, convert this assignment, the items of which are sued on, into an account current between merchant and merchant? Surely not. Besides, there is a charge of *rent* of seven hundred and fifty dollars, which Judge Marshall cites as an instance, out of the exception in the statute.

We think the able and unanswerable opinion of chief justice Marshall in the case of Spring *et al. v.* Gray's executors, must be decisive with this court; 6 Pet. Rep. 151, 160.

On this subject we do contend that the court was bound to give the 10th instruction we asked, that if none of the items of the account arose within six years before suit brought, the statute is a bar. We admit that the authorities are contradictory, but the weight of them are with us; and this court has also decided this question in the case of Freeman *v.* Davis; 2 How. Rep. 803; Angel on Lien, 198, et seq.; 5 John. Ch. Rep. 522.

And lastly, we conceive we are clearly entitled to a new trial, on the grounds that the verdict is clearly against law and evidence, and the instructions of the court.

1. The instructions violated by the verdict of the jury. Examine the instructions asked by defendant's counsel below, and the jury could not at the same time regard them, and pay the least regard to the evidence.

2. It was as a verdict against law. It will not do to cite the statute of jeofails; that regards the form of action, &c., for which a demurrer will lie. The declaration is not demurrable. The law applicable to the case we conceive will be readily apprehended by the court, from the previous discussion; and we will barely refer the court to the following authorities, as to the granting of new trials, where the verdict is against law; Graham on New Trials, 326; 1 Term Rep. 167; 1 Bussom, 390.

The verdict being clearly not only against the weight of testimony, but against the whole testimony, when properly weighed and understood, the court on this ground alone will grant a new trial; Gra. on New Trials, 361; 3 Burr. 1835; 1 Caines, 520.

And this court will grant a new trial, if from the record they believe the court below ought to have granted it; Rev. Stat. from 1824 to 1838, page 314.

Fox *v.* Fisk.

Montgomery and Boyd, for defendants in error.

The statute authorizing the petition for discovery, leaves the practice of the courts of chancery to regulate the proceedings.— How. & Hutch. 606.

A court of chancery will, on exceptions taken, order all matter which is impertinent to be stricken out, or expunged. 1 Smith's Practice, 572–3.

Statements in an answer are impertinent, if they are neither called for by the bill, nor necessary to the defence. 1 Smith's Practice, 568; 1 R. & M. 28.

It is said that the court erred in giving the several instructions as asked for by the counsel of Fox, which are as follows:

If the jury believe from all the evidence that the property and notes may have been converted into money by the agent of A. Fisk & Co. they may presume such to have been the case; and in such case an action like this is the proper remedy to recover it. 2 Binney, 325; 11 Mass. Rep. 494; 4 Pickering, 71; Salk. 442; 2 Wend. 482; 2 Lord Raymond, 930; Comyn on Contracts, 324, 330. If there was error in bringing an action for money had and received, it is covered by the statute of jeofails. How. and Hutch. 591, sec. 11.

The replication to the defendant's plea of the statute of limitations is founded on the exception in the statute in favor of "such actions as concern the trade of merchandize between merchant and merchant, their factors, agents and servants." How. & Hut. 569.

Although there is some contrariety of opinion among jurists as to the precise meaning of this exception, and there have been conflicting decisions, it is conceived the strength of authority will be found to be, " that an open and unsettled account between merchants, which concerns the trade of merchandize, is not barred by the statute, although no item occurred within six years previous to suit. Ballentine on Lim. 70 to 80; Main. Rep. by Greenleaf, 338 to 349; Angel on Lim. 211; 5 Cranch, 15.

The sixth instruction was:—" that the exception in the statute of limitations in favor of merchants' accounts, extends to all accounts current which concerns the trade of merchandize between merchant and merchant; and that an account closed by a cessation of dealing between the parties is not an account stated; and that it

Fox *v.* Fisk.

is not necessary that any of the items charged in the account sued on should come within the time prescribed in the statute of limitations."

There can be no doubt that the statute of limitations is not a bar, except the account has been fully settled and the balance admitted, although the last item was entered more than six years.—— The whole cause of action is excepted, without reference to the time any portion of it accrued.   1 Coxe's Rep. 196.

The defendant's own account rendered to the plaintiff, by his agent, in 1835, shows that there had been dealing between the parties subsequent to the rendition of the account of 12th May, 1828, which was admitted by Fox to be correct, as the account last rendered commences with a balance of $2630 09, which is nearly six hundred dollars less than the account of May, 1828; and this last account contains a credit of $295 40, for the proceeds of cotton sold by defendants for account of plaintiff on the 8th of May, 1830.

A. Fisk & Co's second account shows a credit for nett proceeds of forty-one bales of cotton received and sold on account of Fox, in December, 1828, and April, 1829, more than a year after the account was admitted to be due.

If after an account is stated, the balance is carried to a new account between the same parties, the statute will not operate as a bar.   1 Mod. 270.

It is contended that the circuit court erred in refusing to give to the jury the tenth instruction asked by the counsel of Fox: "that if the jury believe from the testimony that there were no mutual accounts and mutual dealings between said Fisk & Co. and said plaintiff (Fox) for more than six years before the commencement of this suit, then said action is barred by the statute of limitation of this state.   The authorities heretofore cited show that it is not necessary that every item of the account should have been entered within six years.   The only distinction is between settled and unsettled accounts.   5 Cranch, 18;  Ang. on Lim. 211.

The conduct of defendants shows that they did not consider the account closed, as they brought forward the balance from the account acknowledged to be due as the first item of the new account; and continued the debits and credits as an open account, and treat

it as an open unsettled account in 1835.  It is well settled, that where the balance is acknowledged, and brought forward, and dealings continue of debit and credit, that the new account, including the acknowledged balance, is not barred by the statute.  Ang. on Lim. 202–3; 3 Pick. 96.

But if the account of Fisk & Co. *v.* Fox was barred, it does not follow that Fox's account *v.* Fisk was barred; the account of Fox has never been settled, and there is no pretence that it is a stated account.

But it is contended that Fox's account was created merely by making payments to Fisk & Co. of an acknowledged balance.  If Fisk & Co. or their agents, had received the goods, cotton and notes, &c. as satisfaction of their demand, the argument would be unanswerable, but they received them to be disposed of according to their discretion, at the expense and risk of Fox, and so far as they have accounted have credited him with the nett proceeds only.  This was but a continuation of the dealing on the same terms they dealt before the balance due was admitted.  This position is proved by the several accounts of A. Fisk & Co.  This action is brought to recover for items of merchandize which have not been accounted for, and it will not do for Messrs. Fisk & Co. to protect themselves from accountability merely by refusing to account for a part of the items.  Fisk & Co. admit the right to recover for several bales of cotton which were sold for account of Fox since the account was settled, subject to his set-off, but denies the right to recover for other cotton and goods delivered to him at the same time.  If they are liable for one, they are liable for all; as there can be no distinction, all having been delivered on the same terms.

As to the notes and accounts, they were received as collateral security for the payment of the balance due Fisk & Co. and will be considered as a payment, unless the recipient shows that he has used due diligence to collect them and been unsuccessful, and brings them forward to be delivered up.   18 Com. Law Rep. 203; 1 J. Rep. 34;  Bayley on Bills, 402; 3 Cranch, 311; 3 Taunt.130. From these authorities it will appear that a bill or note will satisfy a precedent debt if the holder make it his own by laches.  Our statute is declaratory of the common law on this subject.  How.

& Hut. 373, sec. 11.   The equity of this statute applies to the case before the court.

Opinion of the court, by Mr. Chief Justice SHARKEY.

The case has been discussed at great length, and the record is voluminous and presents a mass of testimony which has been examined with great care, with a view to ascertain the propriety of the grounds taken for reversing the judgment, and we are requested to give an opinion on all the points raised, with a view to a final settlement of the entire merits of the case.   The first ground taken is that the action is misconceived; the second, that the agency was insufficient to bind Fisk; and the third is the bar created by the act of limitations.   The force and application of these several points can be considered more conveniently by following the order adopted in the assignment of errors, the first of which is, that the court erred in excluding part of Fisk's answer to Fox's bill of discovery.   Most of the answer excluded was objectionable, as it was argumentative and not responsive to the bill. There were small portions excluded which might have been properly admitted; such as the statements containing the substance of the letters received; but as the letters themselves were made a part of the answer, these statements were immaterial; the defendants lost nothing by rejecting them.

The second error is that the court improperly allowed Hoslip's deposition to go to the jury.   The ground of objection was, that the cross interrogations were not appended to the commission and forwarded.   This was mainly owing to the fault of the defendant's counsel, and I incline to think that the court did right; the question, however, is of little importance, and I shall not examine it.

Third, that the court erred in giving the several instructions asked for by the counsel of Fox.   The correctness of this position must of course depend upon the instructions themselves, and our attention will be confined to such as may seem objectionable.

The court instructed the jury, "that if they believed from the evidence that the property and notes may have been converted into money by the agent of A. Fisk & Co., they may presume such to have been the case, and in such case an action like this is the proper remedy."   The error consisted in telling the jury that if they

believed a certain thing might have been done, they had a right to presume that it had been done.  By the bill of particulars, Fisk is charged with sundry notes of hand, without naming them, delivered to his agent by Kenneday, Elliott & Co. amounting to eight hundred and forty-four dollars; also with sundry "book accounts on sundry persons, delivered by the same persons to the agent, amounting to three thousand five hundred and thirty-three dollars and forty-eight cents; also with three shares of stock in a steamboat company, amounting to three hundred dollars; and also with sundry receipts received by the agent, given by officers for claims deposited for collection, amounting to six hundred and four dollars and thirty-four cents.  In order to recover for money had and received, the plaintiff will have to prove the receipt of money, or of something which may be readily turned into money.  4 Phil. Ev. (late ed.) 117.  It is said that the receipt of stock will not be considered as the receipt of money.  Promissory notes, it is true, may be given in evidence under the common counts, but this must be between the original parties. Id. 15.  In such case the note is regarded as evidence that the maker received that much money from the payer, and in more recent cases it has been held that any holder of a negotiable note may give it in evidence against the maker under the money counts.  But this action is for the amount of notes made by other persons, which were delivered by Fox to Fisk's agent, in liquidating a claim due from Fox to Fisk.  After diligent examination, I have not been able to find any case like this, in which the action for money had and received would lie, without proof that the notes had been converted into money, or received and used as such.  In the case of Gillard *v.* Wise et. al. 5 B. & Cress. 134, the action was for money had and received for the notes of a banker deposited with the defendants, who were also bankers; but it was held to lie exclusively on the ground that the notes had been received as cash, and used as such by the defendants, by having them credited to their account in payment of the other bankers.  So in the case of Peckard *v.* Banks, 13 East, 20, a stake holder who had received as cash country bank notes, and who had paid them over wrongfully, was held liable in this form of action; but it was only because they had been received and treated as money by all parties.  Vide 2 J. J. Marshall, 69.  But

Fox v. Fisk.

even if the amount of the promissory notes could be recovered under the count for money had and received, still it must be perfectly clear that the book accounts, and the officers' receipts, can furnish no ground for a recovery under this count without actual proof that the money was received for them. They are never negotiated as notes are, nor are they evidence of debts. They are not binding or conclusive on any one. The court therefore should have charged the jury that the plaintiff was not entitled to recover for these items, without proof that the money had been received on them.

Other instructions were given, which are less objectionable than that which we have just noticed, and we shall therefore proceed to the consideration of the remaining errors assigned.

Fourth. That the court erred in refusing to give the tenth instruction asked by the defendant's counsel, to wit: "that if the jury believe from the testimony that there were no mutual accounts and mutual dealings between said Fisk & Co. and said plaintiff for more than six years before the commencement of this suit, then said action is barred by the statute of limitations of this state." The question here presented is one about which there seems to have been much difference of opinion, both in England and the United States, and it seems to be still in an unsettled state. I incline to think the court was right in refusing it; but as it is not important in the case, I shall give no positive opinion.

Fifth. The next and only remaining error assigned is, that the court erred in refusing the defendant a new trial on the reasons set out in his motion, and in rendering judgment on the verdict against said Fisk. The two remaining grounds taken for reversing the judgment may be considered under this last assignment, to wit: that the agency of Caldwell and Findley did not bind Fisk to the extent claimed, and that the cause of action is barred by the statute of limitations.

Caldwell was first appointed agent of A. Fisk & Co. to receive payment of the debt due from Fox to Fisk, and his instructions were reduced to writing. His authority extended no further than the collection of the debt, either in money or its equivalent. Under this instruction he proceeded to Shannonsville, Tennessee, which was Fox's place of business. He succeeded, to a limited

Fox *v.* Fisk.

extent, in the object of his agency; but before he consummated an entire settlement he left the place, giving the business over into the hands of Findley, to whom Fox had made an assignment of certain effects for the benefit of Fisk. Caldwell could confer no greater power on Findley than he had himself, and Fisk never recognized the agency of Findley as extending beyond the mere collection of the debt due him. The correspondence shows this; in addition to which, Fisk was called on, by bill of discovery, to state whether Caldwell and Findley were not his agents. He answers that their agency extended no further than the collection of his debt. This answer being called for by the plaintiff, and introduced by him, is conclusive in settling the extent of the agency. Both Caldwell and Findley were therefore special agents, entrusted to do a particular thing, in the doing of which they were expressly instructed to do nothing which would increase the liability of Fisk. The principle of law is a familiar one, that an agent cannot bind his principal beyond the extent of his authority; and the law is even more rigid in circumscribing a special agent within his authority, than it is with a general agent. Any act exceeding the special and limited authority is a nullity. Story on Agency, sec. 126. On this principle it was held, in the case of Roseter *v.* Roseter, cited from 8 Wend., that a special agent could not bind his principal by note, although he had full power to adjust all the concerns of the principal in a particular place; and it was also held that power conferred by general words must be construed with reference to the matters expressly mentioned. Implied authority must be construed in the same way, and thus the authority of Findley could not be construed to extend further than the mere collection of Fisk's debt, and any seeming latitude which the correspondence of Fisk may appear to sanction must be understood as applying to the single object of the agency. If the special agent in the case cited could not bind his principal by note, with equal propriety may it be said that Findley could not bind Fisk on account. His authority did not extend to creating obligations, but merely to the liquidation of a single debt. And of the extent of his power Fox was fully apprized; it was at his own suggestion the agency was created. He was therefore not imposed on by Findley's being held out as a general agent. And the transac-

tions show that to a certain extent at least he did not rely on the liability of Fisk. There were two assignments of effects to Findley for the purpose of paying the debt to Fisk, and these assignments may serve to throw some light on the question of agency. The last is dated 20th March, 1829, and by it Findley acknowledges the receipt of certain "articles to be collected by him for the payment of A. Fisk & Co's claims against Fox, which when satisfied I bind myself to return (if any) the residue to said Fox." The items in this receipt are charged in the bill of particulars. By this receipt Findley made himself personally responsible for the residue, and Fox accepted that responsibility. The first assignment is not in the record, nor is it accounted for, but we have no reason to presume that it was different from the last. The conclusion is, that Findley was looked to as personally responsible for all beyond the amount of Fisk's debt. Neither of the agents were authorized to take goods, except "*at a sound value.*" This did not authorize them to take any thing beyond the amount of the debt, and if Fox with his knowledge of their authority trusted them further it was his own folly. When Fisk wrote to Findley to act in the matter as he would for himself, he is not to be understood as extending the authority of Findley beyond the collection of the debts; we have already seen that general expressions must be limited to the object of the agency. There is another circumstance which tends strongly to show that Findley was a mutual agent. When he established the store at Shannonsville he collected the debts due to Fox in cotton and other commodities, by paying to the debtor any balance that might be due in money. Fisk had remitted him no money, nor had he authorized him to pay any; on what authority then did he do so, unless at the request of Fox. These considerations induce us to believe that the agency was not sufficiently general, either by express authority or by implication, to justify the verdict; but if there could be any doubt on this subject the remaining question is clearly with the plaintiff in error.

To avoid the operation of the statute of limitation, the plaintiff below replied to the exception, that the cause of action was an account between merchant and merchant concerning the trade of merchandize. This exception is a good one, where the parties are both merchants *at the time the cause of action accrued,* if the

Fox *v.* Fisk.

account be unsettled or current, and mutual—that is, if it arose in a mutual or alternate course of dealing, consisting of debits and credits; and it must also have originated for articles of merchandize. Ballantine on Limitations, 70, 71, 72, 73 and notes: 6 Pet. 151, Spring et al. *v.* The Executors of Gray.

If the account has been stated or closed, the exception does not apply, and it is insisted that the dealings were not mutual within the meaning of the statute, Fisk's account having been stated and closed before the account of the plaintiff below commenced. The evidence on this subject is gathered from the correspondence which is made a part of Fisk's answer. On the first of May, 1828, Fox wrote from Shannonsville, by his agent, to A. Fisk & Co. at New Orleans, informing them that he was in custody at the suit of his creditors, but would reserve sufficient to satisfy them, and requested that they should send an agent to attend to their claim. On the 12th of May they appointed Caldwell as their agent, and in their written instructions say, "We now hand you our account current with that gentleman [Mr. Fox] to this date—balance due us thirty-two hundred and twenty-two dollars twenty-seven cents." On the same date they wrote to Fox, expressing their regret at his condition, and informing him that they had appointed Caldwell their agent to settle their account with him; they say, "Mr. Caldwell will also hand you our account current with you, with interest account to this day—balance in our favor of thirty-two hundred and twenty-two dollars twenty-seven cents." On the 10th of June, 1828, Fox wrote to Fisk & Co., and in his letter says, "Your friend, Mr. Caldwell, arrived here 21st May; by whom I received your favor, accompanied with account of sales and account current, leaving in your favor thirty-two hundred and twenty-two dollars twenty-seven cents, all of which I find correct." It seems that before the date of these letters there had been mutual dealings between the parties, and the necessity of a settlement became apparent from Fox's situation; indeed, he suggested the propriety of such a course. Fisk & Co. accordingly present the account current between them, showing the items and a balance due them, to the correctness of which Fox gives his written acknowledgment. This undoubtedly made it an account stated. It is brought precisely within the definition given by Lord Mansfield

in Trueman *v.* Hurst, 1 Term R. 40.   It is an agreement between both parties that all the articles are true and the balance just.   On this state of case Fisk might have maintained an action without further proof than the letter of Fox; and the account thus stated was surely subject to the operation of the statute of limitations. It had ceased to be an account current.   In this settled state it was treated in the subsequent correspondence.   All of the account of Fox has originated since Fisk's balance was so stated and acknow-ledged.   There were therefore no mutual dealings within the meaning of the statute.   All subsequent dealings were as pay-ments of this balance, or as charges made by Fox, without any new charges made by Fisk.   In rendering this account a second time; interest was added, and a charge for part of the expenses of Caldwell in going to Shannonsville; but the interest did not change the nature of the account; on the contrary, it shows it was con-sidered as stated.   Nor was it changed from a stated to a current account by charging for Caldwell's expenses, for it was discretion-ary with Fox whether he would pay this or not.   It was, more-over, not an item which concerns the trade of merchandize, and a single item added to a stated account of long standing, does not bring it within the rule that the balance of an account stated car-ried to a new account will make it an item merely in an account current.   18 Pick. R. 30.

We therefore think that the evidence sufficiently established a stated account, and consequently Fox's account was barred by the statute, because there were no open mutual accounts between the parties, and that for this reason also a new trial should have been granted.

The judgment must be reversed and cause remanded.