[PRACTICE.]

THE UNITED STATES *against* TILLOTSON and another.

Where the burthen of proof of certain specific defences set up by the defendant is on him, and the evidence presents contested facts, an absolute direction from the Court, that the matters produced and read in evidence on the part of the defendant were sufficient in law to maintain the issue on his part, and that the jury ought to render their verdict in favour of the defendant, is erroneous ; and a judgment rendered upon a verdict purporting to have been given under such a charge will be reversed, although the record was made up as upon a bill of exceptions taken at a trial before the jury upon the matters in issue, no such trial ever having taken place, and the case having assumed that shape by the agreement of the parties, in order to take the opinion of the Court upon certain questions of law.

*Feb. 24th.*

THIS cause was argued by the *Attorney General* and Mr. *Coxe* for the plaintiffs, and by Mr. *Webster* and Mr. *Wheaton* for the defendants.

*March 2d.*

Mr. Justice STORY delivered the opinion of the Court. This cause comes before us from the Circuit Court for the Southern District of New-York, as upon a bill of exceptions

taken to the opinion of the Court, upon a trial before a jury upon the matters in issue. In reality no such trial was had; but the case assumed this shape by the agreement of the parties, in order to have the opinion of the Court upon certain questions of law. We must, however, consider the case exclusively upon principles applicable to it as a bill of exceptions taken at a real trial.[a]

Upon the argument in this Court, various important questions have been elaborately discussed by counsel, upon which we forbear to express any opinion, as our judgment of reversal proceeds upon a ground, which renders any decision on them unnecessary.

The bill of exceptions admits the due execution of the bond in controversy, and the breaches stated in the declaration are answered by special notices of defence set up as bars to the suit. The burthen of proof of these defences, in point of fact, rested on the defendants. The Court is supposed to have charged the jury, that the matters produced and read in evidence on the part of the defendants were sufficient in law to maintain the issue on their part, and that the jury ought to render their verdict in favour of the defendants. This charge can be maintained in point of law only upon the supposition, that the evidence presented no contested facts; for otherwise it would withdraw from the jury their proper functions, to determine the facts upon the evidence in the cause.

Upon examining the record, we think that there is contradictory evidence, or rather evidence conducing to opposite results, in respect to a point material to many of the specifications of defence, and particularly as to the matters in the third, fifth, sixth, seventh, eighth and ninth. It is this: whether the contract of the 7th of June, 1820, between Col. Gadsden, as agent of the War Department, and Samuel Hawkins, was ever a consummated agreement, binding on the United States, in virtue of an original authority given to him,

---

a The cause was argued and determined in the Court below upon a case agreed upon between the parties, containing a state of facts; but as the state of facts was not annexed to the transcript of the record, this Court could not take notice of it.

1827.

U. States
v.
Tillotson.

or was a preliminary agreement dependent for its validity upon the ratification of the War Department; and if that was withheld, (which there was direct evidence to prove,) the agreement was a mere nullity. The bill of exceptions does not in terms find, that the agreement was such a consummated agreement. It merely states, that "on or about the 7th of June, 1820, Col. James Gadsden, then acting as the agent for fortifications at Mobile Point, and *thereto duly authorized by the said War Department*, did enter into an agreement or contract with the said Samuel Hawkins, touching the foregoing contract, with the said Benjamin W. Hopkins, and the erection of the fort therein provided for," &c. The word "thereto" may be applied either to the next antecedent, the agency of fortifications, or to the subsequent clause stating the agreement. It may mean, having a due authority as agent for fortifications, or having a due authority to enter into the agreement. The recital in the agreement itself, that Col. Gadsden entered into it "in pursuance of the instructions of the Secretary of the War Department," would not be decisive of the point, supposing it to be entitled to the fullest weight as matter of recital. But the case does not rest here: in another part of the record, evidence is introduced on the part of the United States, to establish, that the agreement so made had never been ratified on the part of the War Department; and also to show, that it was understood by that department, that without such ratification the contract was not obligatory. We allude to that part of the record, where it is stated, that the agreement, as soon as executed at Mobile Point, was transmitted to the War Department, and that a letter was written by the authority of that department, under date of the 10th July, 1820, to the defendants, as Hawkins's sureties, enclosing a copy of the agreement, and requesting them, if they would sanction it, to send certificates of the fact, and "signify their approval, and authorize it to be carried into effect"—and it is added, "should you object, *the contract will be carried on as before*," that is, the *original* contract. It is further found by the case, that the agreement "was not ratified by the Secretary of War, nor ever acted upon, except so far as it may appear to have

been ratified and acted upon by the said transcript" (of the treasury accounts) contained in the record.

It appears to us, that, taking this evidence together, it was not a conceded point, but a matter of controversy between the parties, whether the agreement was obligatory upon the United States, and had become absolute by the assent of all the persons who had authority to perfect the same. This being so, it was a matter of fact to be decided by the jury; and the charge of the Court was erroneous in withdrawing it from the consideration of the jury.

For this reason it is our opinion, that the judgment of the Circuit Court was erroneous, and ought to be reversed, and the cause be remanded, with directions to award a *venire facias de novo.*[a]