HENRY D. DARDEN & WIFE *vs.* SARAH A. LINES, ET AL.

The Supreme Court of this State has no jurisdiction in a cause in Chancery, brought up by appeal from a decree, *pro forma*, entered in the Court below by consent of parties.

At a Circuit Court, held in and for the county of Gadsden, on the 16th day of November, 1848, the following decree was entered in this case : " And now, on this sixteenth day of November, came the said complainants and defendants, by their respective solicitors and counsel ; and thereupon it was agreed by counsel, that a decree *pro forma* shall be entered, sustaining the demurrer filed herein—so as not to exclude the Judge of this Court from sitting in this cause in the Supreme Court on the hearing thereof.

" It is, therefore, ordered, adjudged, and decreed, that the demurrer of the said Sarah A. Lines and others, defendants, to the complainant's said bill of complaint, be sustained, and the bill be dismissed, at the costs of the said complainants.

" And the said parties respectively agreeing thereto, it is ordered that said complainants be allowed their appeal to the Supreme Court, without bond and security."

This case, and others in which *pro forma* decrees had been entered, were submitted to the Court, upon the question of jurisdiction, upon which the Court were divided, and gave the following opinions :

Opinion by Chief Justice DOUGLAS :

This and other cases have been brought up to this Court, on decrees made in the Court below, by consent of parties, " *pro forma.*" The professed object of the proceeding is, to *avoid* the provision of the Constitution of this State, which disqualifies the judge who decides a case in the Court below from sitting on the trial or hearing of it in this Court ; and in other cases, to prevent the delay which would occur from the inability of some of the justices to sit in this Court, in consequence of their having been of counsel, or otherwise concerned in the case in the Circuit Court ; and thereby to secure a trial in this Court by all the justices of the Supreme Court, including, of course, the judge who, by consent of the parties, rendered the decree " *pro forma*" in the Court below. In order that this matter may be more readily and clearly understood, it is deemed proper

heré to refer to that clause of the Constitution which creates this disqualification ; it is as follows, to wit : " No Justice of the Supreme Court shall sit or take part in the Appellate Court, on the trial or hearing of any cause which shall have been decided by him in the Court below." See Thompson's Digest, page 50, sec. 2, No. 4.

Another object professedly is, to avoid also the delay that would otherwise have occurred in the Circuit Court, from the disqualification of the judge to *try* a cause in which he had been employed as counsel, or attorney. The statute which creates the disability, declares that " It shall not be lawful for any judge of this State to try any cause in which he may have been employed as counsel or attorney, but shall continue the same until some some judge shall hold court in the circuit in which said causes may be pending, that was not employed in such cause at the time of his election." Ibidem, 55, No. 11.

It seems to be supposed that the judge who had been thus employed may, by consent of parties, make such decree " *pro forma*," and send the case up to this Court, and that this Court can take jurisdiction of it. If this can be done, it is very clear that it is upon the principle, that the case is *not tried* in the Court below, and that this Court can take jurisdiction of a case that has *not* been *thus tried ;* and it has been strongly insisted that the judge who made such decree may sit and take part in the trial and hearing of the case in this Court. From this statement, two questions naturally arise : *First.* Can this Court entertain jurisdiction of a case upon a decree thus rendered, by consent *pro forma ?* and

*Second.* If it can, may the judge who pronounced such decree rightfully sit as judge, and take part in the trial or hearing of such case in this Court ?

The *first* is by far the most important question, and, indeed, seems decisive of the other ; for I am free to confess that, if I entertained no doubt but that this Court might rightfully take jurisdiction of a cause thus brought up, I should not hesitate, were I the judge who made the decree *pro forma*, to sit and take part here in the trial and hearing of the case, upon the principle that it was not in fact tried or decided by me in the Court below. But entertaining as I do a very serious doubt upon that subject, and having expressed that doubt, it is proper that I should state the reasons on which it is founded, and the views which I entertain in relation thereto.

JANUARY TERM, 1849. 571

Darden and wife *vs*. Lines et al.—Opinion by Chief Justice Douglas.

The Constituton, art. 5, sec. 2, Ibidem, 50, No. 1, declares that " the Supreme Court, except in cases otherwise directed in this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with the State, under such restrictions and regulations, not repugnant to this Constitution, as may, from time to time, be prescribed by law." This is not one of the excepted cases, nor is the provision in regard to it repugnant to the Constitution. The same section, Ibidem, No. 5, says : " The Supreme Court shall have and exercise appellate jurisdiction in all causes brought up by appeal or writ of error from the several Circuit Courts, where the matter in controversy exceeds in amount or value fifty dollars." " An appeal is the act by which a party submits to the *decision* of a superior court a cause which has been *tried* in an inferior tribunal." 1 Bouvier's L. Dict., 82.

From the record of this case, it does not appear that there has been any trial of this cause in the Court below—and if not, then it is not a proper case for an appeal.

But it is said that it has been *decided* in the Court below, and, therefore, may be properly reviewed here. Has it, however, been decided. To *decide* is to *determine*, to *form a definite opinion ; decided* means *determined, ended, concluded ;* the word *decided* implies *decision*, clear, unequivocal, that puts an end to doubt. Webster's Dict., Fol. Ed., 1848, page 306. It implies in this case the exercise of judgment upon the law and the facts of the case. Judgment is the decision or sentence of the law given by a court of justice, or other competent tribunal, as the result of proceedings instituted therein, for the redress of an injury. The language of judgments, therefore, is not that it is decreed or resolved by the Court, but it is *considered,* " *consideratum est per curiam,*" his debt, damages, or possession, or the like. Ibidem, 548.

The Supreme Court of the United States, in the case *ex parte* Tobias Watkins, 3 Peters, 202, says : " A judgment of a court of competent jurisdiction in its nature concludes the subject on which it is rendered, and pronounces the law of the case ; it puts an end to all enquiry respecting the fact by deciding it."

A decree is the judgment or sentence of a Court of Equity ; it is either interlocutory or *final*. The former is given on some plea or issue in the cause, which does *not decide* the main question ; the latter settles the matter in dispute, and a final decree has the same ef-

fect as a judgment at law.    Bouvier's Law Dict., 295, and authorities there cited.

It will hardly be seriously contended, we think, that there is any such final decree in this case, or that there has been any such _decision_, any such action of the mind of the Court upon it.    The proceeding on its face does not import any such thing ; on the contrary, it appears very clearly intended as a device to avoid what seems to me a clear, plain and unequivocal provision of the Constitution.    It is true there is a decree which, if taken by itself, apart from its context, would import finality, but then the record tells us that it was entered by consent of parties, " _pro forma_," which means " _a mere matter of form._"    Branch's Principia, page 114.    Now is mere matter of form to be held conclusive ?  Is that the result of proceedings instituted in a court of justice, for the redress of an injury ?

The decree is either final, or it is not final ; if it is _not_ final, then it is not properly here, for no appeal lies except on a final decree. Putnam v. Lewis and wife, 1 Florida Reps., 455, 464, 474, and authorities there cited ; to which may be added, Gray v. Grundy, 2 J. J. Marshall, 134.    Horsey v. Hopkins, Ibid., 54.    Read v. Robb, 4 Yerger, 66.    Hoyt v. Brooks, 10 Conn., 188.    Kierk v. Shriver, 11 Gill & John., 405.    The State v. Pepper, 7 Miss., 348.

If it shall be said that it is a final decree, then I answer that no appeal lies from a final decision entered by consent, " _consensus tollit errorem._"    Co. Lit., 126.    Webb v. Webb, 3 Swanst., 658.    Morrell v. Lawrence, et al., 12 John., 521.    Waller v. Harris, 20 Wendell, 563.    'Ringold's case, 1 Bland., 5, 12.    Harrison v. Roussey, 2 Vez., 488.    Toder v. Sansome, 7 Brown, P. C., 244.    Bradish v. Gee, Ambler, 229.    Jones and others v. Talliaffer. Car. Law Rep., 376.    2 Smith's Chy. Pr., 50.    1 Barbour Chy. Pr., 712.

The case of Marbury v. Madison, 1 Cranch, 137, 1 Peters' Cond. Reps., 282, has been cited to sustain the jurisdiction in this case.— In that case, Chief Justice Marshall held that the essential criterion of appellate jurisdiction is, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause.

If this be the essential criterion, (and I do not doubt it,) then the principle is conclusive upon this case ; for the Court below created no cause for this Court to act upon, unless it committed an error in rendering the _pro forma_ decree.    As it did nothing else, it is very clear that there is nothing else, no other proceeding of that Court for this

Darden and wife *vs.* Lines et al.—Opinion by Chief Justice Douglas.

Court to correct; at least nothing which may not be just as well corrected in that Court.    It was not the action or the original cause of action to which the Chief Justice referred—no court creates them—it is the errors committed in the subordinate tribunal, upon which the appellate jurisdiction is to be exercised.    If the final decree of the inferior court is, in all respects, right, there is nothing for the appellate court to correct, no case made for the action of the appellate court.    It is true the appellate court may look into the record of a case which is within its jurisdiction, and has been brought according to the regulations prescribed, to ascertain whether there is any thing in it that requires correction, and if there is not, may affirm the judgment or decree of the subordinate tribunal.    To warrant this, however, there must have been a *trial* in the Court below. Trial " is the *examination* before a competent tribunal, according to the laws of the land, of the facts put in issue in the cause, for the purpose of determining such issue."    2 Bouvier's Law Dict., 457.— "The *examination* of a cause in controversy between the parties, before a proper tribunal," Webster's Dict., Fol. Ed., 1848, page 1173, and it must have been properly brought up.    But if it is not within its jurisdiction, or brought up according to the regulations prescribed, it cannot act upon it at all, further than to dismiss and remand it for such action in the Court below as to right and justice shall appertain.

The case of Ponder *v.* Moseley, *et al.*, administrators, &c., 2 Florida Reps., 267, has been cited to show that no evil consequences can flow from the exercise of jurisdiction in these cases, because the Court there held in accordance with the principles laid down in Elliot et al., *v.* Piersal et al., 1 Peters' Reps., 340, and re-asserted in 2 Peters, 369, that where a court has *jurisdiction*, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding on every other Court ; and according to Vourhees *v.* The Bank of the United States, 10 Peters, 474, 475, where the Court says : " The line which separates *error in judgment* from the usurpation of power is very definite, and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally when offered as evidence in an action concerning the matter adjudicated, or purporting to have been so.    In the one case, it is a record importing absolute verity—in the other, mere waste paper."

But this Court has *never decided* that where there was an *usurpation of power* the judgment was conclusive and could not be enquired into and declared a nullity collaterally ; or, where the Court had *no jurisdiction* the record of its judgment would import verity, or any thing more than *mere waste paper*. In the case of the United States *v.* Stone, 14 Peters' Rep., 524, 525, a verdict was rendered in the District Court; it was then, by consent of counsel, transferred to the Circuit Court, precisely in the state in which it then was, and a division of opinion there entered, *pro forma*, to send the case to the Supreme Court of the United States, which the latter Court deemed exceedingly irregular. "We are aware," said the Court, "that in some cases, where the point arising is one of importance and difficulty and it is desirable, for the purposes of justice, to obtain the opinion of this Court, the judges of the Circuit Court have sometimes, by consent, certified the point to this Court as upon a division of opinion, when, in truth, they both rather seriously doubted than differed about it. We do not object to a practice of this description when applied to the proper cases and on proper occasions ; but this must be sanctioned by the judgment of one of the judges of this Court in his circuit. A *loose practice* in this respect might render the Court substantially a court for the original decision of all causes of importance, when the Constitution and the laws intended to make it altogether appellate in its character ; except in the few cases of original jurisdiction enumerated in the Constitution."

This case has been invoked to sustain the jurisdiction of this Court in the case at bar ; but, when rightfully considered in reference to the Constitution of the United States and the acts of Congress conferring jurisdiction upon that Court, it seems an authority against it. The case of Grant et al. *v.* Raymond, 6 Peters, 220, 221, cited for the same purpose, came before the Supreme Court of the United States in the first place, on a certificate of a division of opinion in the Circuit Court of the United States for the Southern District of of New York. On inspecting the record it appeared that, at the trial of the cause in the Circuit Court, the counsel for the defendants had excepted to the decisions of the Court on various matters which had been presented for its consideration, and that a bill of exceptions had been sealed by the Court. A motion was made for a new trial, when the opinions of the two judges of the Circuit Court were opposed upon questions presented for the decision of the Court, excepted

to on the trial, as stated in the bill of exceptions. The Cir. Court certified a division of opinion on the motion for a new trial. The question was whether the Court would entertain the case as it came up from the Cir. Court on a division in that Court on a motion for *a new trial.* C. J. Marshall suggested that the case might be brought on if the parties would agree that it should stand as if a judgment had been given by the Circuit Court on the bill of exceptions ; which was done, and an agreement in writing filed. But the Court said "it would reserve its opinion and judgment in the cause till the defendants in the Court below shall have sued out a writ of error in this cause to the said Circuit Court and filed a return thereto, with a bill of exceptions in the usual form, signed by the Court below, in this Court." So very careful was that learned Court to have the cause *rectus in curia,* before it would give its opinion or pronounce its judgment upon it.

In the case of the United States *v.* Tillotson, 12 Wheat., 180, 6 Peters' Condensed Reps., 507, the Court held that " Where the burthen of proof, in certain specific defences set up by the defendant, is on him, and the evidence presents contested facts, an absolute direction from the Court that the matters produced and read in evidence on the part of the defendant were sufficient in law to maintain the issue on his part and the jury ought to render their verdict in his favor, is erroneous, and a judgment purporting to have been given under such a charge will be reversed, although the record was made up as upon a bill of exceptions, taken at a trial before the jury upon the matter in issue, no such trial having taken place and the case having assumed that shape by the agreement of parties in order to take the opinion of the Court upon certain questions of law."— All this case proves is that the Supreme Court of the United States will sometimes give its opinion upon a point of law for the satisfaction of counsel or parties upon an *assumed case,* in which, of course, no question of jurisdiction could possibly arise.

Prigg *v.* the Commonwealth of Pennsylvania, 16 Peters, 609, is the strongest case to which we have been referred in support of the jurisdiction that we are called upon in these cases to exercise ; but in that case there had been a jury trial, a verdict taken and judgment rendered upon a criminal charge in a subordinate tribunal of. that State. The question to be decided arose under the 25th section of the judiciary act of 1789, which confers upon the Supreme Court of the United States jurisdiction of questions such as arose in that

case.   The Supreme Court of Pennsylvania affirmed *pro forma* the judgment of the Court below and the case was carried up to the Supreme Court of the United States upon the single question of law presented in it, and which would have been precisely the same in any shape in which the case might have been carried up ; was one which no other court was competent finally to decide, and it was appellate and not original jurisdiction which that high tribunal was called upon to exercise—it was that the errors in the proceedings of the courts of Pennsylvania might be corrected that the case was carried up.   Had it been taken up before it had been investigated in a subordinate tribunal, no doubt the Supreme Court of the United States would have at once dismissed it for want of jurisdiction.   And it is believed that no case can be found where the parties have been permitted so to mould and shape the proceedings in it as to bring the original matter or cause of action, and the testimony offered to sustain and rebut it, before that Court for adjudication, until it had first undergone the ordeal of a subordinate tribunal, whose proceedings they were called upon to revise and correct, unless it was a case in which the original jurisdiction had been expressly conferred.   Cases so moulded and shaped may have gone there, and been acted upon, but if they have, I will venture to say it was upon some point of law only, and that they passed without observation as to the manner in which they had been brought up.

It has been suggested that we have no statute or rule providing specifically the mode of taking appeals in chancery cases, and that we must, therefore, refer to the English practice.   I fear, however, that their mode of proceeding in such cases is not sufficiently analagous to our own, to be a safe guide.   In the case of Putnam *v.* Lewis and wife, 1 Florida, 475, where it was contended that the test of a decree's being final is that an appeal will lie upon it, this Court [the Judge of the Middle Circuit delivering the opinion] said : " We have been referred to various cases of partition in the English Courts, showing appeals from decisions of the Master of the Rolls to the Lord Chancellor, in cases like the one under consideration.   If their mode of proceeding was like our's, such an authority would be entitled to great respect ; *but we find no such similitude or resemblance.* By our statute which, in this respect, is the same as that prevailing in the Circuit and District Courts of the United States, a decree must be *final* before an appeal can be had.   Not so in the English

courts of chancery, for there an appeal may be taken from every order or petition, motion or interlocutory decree, in the progress of the suit; and this seems to be the course in New York." Citing 3 John. Ch., 66, 68, 163, 319. 9 Vesey, 319. 14 Vesey, 184. 15 Vesey, 184, 585. 16 Vesey, 213, 218. 18 Vesey, 453.

In the case of Armstrong et al. *v.* the Treasurer of Athens County, 16 Peters, 235, 236, Mr. Justice Catron delivering the opinion of the Court said : " This is a writ of error from a State court, and it becomes the duty of this Court, before proceeding to examine the merits of the controversy, to determine whether jurisdiction over it is conferred by the 25th section of the judiciary act of 1789. It is true no question upon that subject was raised at the argument presented for the appellants, (the respondent having no counsel,) but it has been the uniform practice of this Court, in every case of this description, to ascertain in the first instance whether the record presented a case in which we are authorized by law to reverse the judgment or decree of a State court."

The same principle is asserted in Stamps *v.* Newton, 3 Howard's Miss. Reps., 34, by the Supreme Court of Mississippi, who say, "Although the attention of this Court has not been directed to the present defect by the counsel in the cause, yet we are bound to enquire in every case, whether the facts presented by the record give this tribunal jurisdiction."

In the case of Read and others *v.* Robb and others, 4 Yerger's Reps., 66, the precise question now presented to us came before the Supreme Court of Tennessee (of which Mr. Justice Catron was then Chief Justice,) by whom it was held that they had no jurisdiction of an appeal taken from a decree of a chancery court made *pro forma ;* that it had jurisdiction of appeals *only* in cases where there had been a *judicial* action in the Court below.

The attention of the Supreme Court of Alabama was called to this subject in 1845, in the case of Elmes *v.* Sutherland, 7 Ala. Rep., New Series, 269, in which a motion had been made to dismiss the bill for want of equity. The Chancellor refused this motion, and it was then agreed by the parties that a decree *pro forma* should be rendered for all that is alleged or prayed for in the bill, in order that the case might be taken to the Supreme Court for revision. No specific decree was rendered in the case by the Court of Chancery ; it seems to have been carried up on the idea that this agreement was

to be considered as a decree. The Court said : "If in point of fact a decree had been rendered by the Chancellor for the relief prayed by the bill in accordance with the agreement of the parties, it would present a question worthy of grave consideration how far this Court could take cognizance of the cause under such circumstances, as it only has appellate, not original jurisdiction. It is quite possible that we might feel constrained to repudiate a case where the parties had consented to a '*pro forma*' decree."

At the next term of that Court, the question was directly presented in the case of Stone *et al. v.* Lewin. 8 Ala. Reps., New Series, 395 to 399. In that case the Chancellor had been of counsel in the cause, and for that reason an agreement had been made that he might enter a decree *pro forma,* either for or against the complainant, as she might elect, and the following entry appears : " This case is submitted for a decree on bill, answers and exhibits, by consent, with an agreement that a decree *pro forma* be rendered by this Court in favor of the complainant, perpetuating the injunction heretofore in this case granted. It is therefore ordered, adjudged and decreed that the said injunction be, and the same is hereby rendered perpetual ; and that the defendant pay the costs herein." Peck and L. Clark for the plaintiff in error ; no counsel appeared for the defendant in error. Goldthwaite, Justice, delivering the opinion of the Court, said : " We suggested in the recent case of Elmes *v.* Sutherland, that it was questionable if this Court was invested with any jurisdiction when a decree is not made, by the Chancellor, but is entered *pro forma,* by consent of the parties, in order to have a decision here *more speedily,* or from any other cause. This case presents the matter of such a decree so fully that we must now decide the question or consider it at rest. At the formation of our State Government it was provided that " the Supreme Court, except in cases otherwise directed by this Constitution, shall have *appellate* jurisdiction *only.* This is to be co-extensive with the State under such restrictions and regulations not repugnant to this Constitution, as may from time to time be prescribed by law." Const., Art. 5, sec. 2. We remark here that this provision of the Constitution of Alabama is identical with that of our State, which we have above cited. " It is quite unnecessary," says that Court, " to speculate upon the reasons which induced the prohibition contained in this section, as there can be no doubt it was the intention to exclude the exercise of any original ju-

risdiction by the Court. As a Court, our duty certainly is to give it the effect which its authors intended it should have, and this can only be done by refusing to entertain jurisdiction of cases which have not, in point of fact, been decided by the inferior courts. It is quite evident, if the consent of parties can confer what is really original jurisdiction upon this Court, many cases will find their way here which otherwise might not come, and it might become common to use the inferior courts as mere offices for the preparation of causes." And this is in precise accordance with the reasoning of Chief Justice Taney, who delivered the opinion of the Court in The United States *v.* Stone, 14 Peters, 525, and does appear to me to contain a plain, natural and common sense view of the matter. That Court, after further arguing the question, concludes its opinion by the following pertinent remarks, which appear to me to contain great force : "We have endeavored to show that this practice is in conflict with the letter and spirit of the Constitution, and earnestly hope that it may be entirely eradicated, as it is frequently important to a deliberate and correct examination of the cause in this Court, that it should have a careful examination in the subordinate courts. It is only when a cause is thus examined in a court of original jurisdiction, that the many mistakes of the parties can be corrected, deficiencies supplied and new views presented. If this examination is deferred until the case comes into the appellate court, there can in most cases be neither amendment nor revision of the evidence or frame of proceedings, and great injustice may result to suitors. The cause now before us (say that Court) is an illustration of the evil of this practice ; as no evidence was taken to sustain the bill, and the reversal of the Chancellor's decree would conclude the complainant, when, if the same deficiency had been disclosed to him, he might have exercised his discretion in permitting the party to take testimony."

Lord Eldon, who, adorned the woolsack longer than any other man who ever sat in the English Chancery, was so sensible of this, that he considered it to be contrary to the duty of a court of justice, under any circumstances, to make a decree *pro forma*, in order to suffer the cause to go up. " The suitors," he said, " have a right to the deliberate attention and the deliberate judgment of the Court in every stage in which, according to the Constitution, the cause may proceed ; and there can be no circumstances under which I would ever permit myself to say, as the cause is to go elsewhere, I give

*no judgment.*" Lord Eldon did not consider a decree *pro forma* as a judgment of the Court, but as *no judgment.* It is said, however, that the case of LeBaron and Colquitt *v.* Fauntleroy and others, decided by this Court at the last term, came up on a decree *pro forma*—that we acted upon it, and that settles the question. It is true that case did come up on a decree *pro forma,* and we acted upon it ; but it is equally true, that it passed *sub silentio,* so far as the question now under consideration is concerned. No question was made in that case, as to the jurisdiction. The same identical argument was presented to the Supreme Court of the United States, in the case of The United States *v.* Moore, 3 Cranch, 172, which was a criminal case. In the course of the argument, Chief Justice Marshall suggested a doubt whether the appellate jurisdiction of that Court extended to criminal cases, page 188. Mason, in support of the jurisdiction, said : " This Court has exercised jurisdiction in a criminal case," and cited The United States *v.* Simms, 1 Cranch, 252, when that great expounder of the Constitution, to whom the country is more indebted than to all other men beside, for the luminous and able expositions given of that great charter, which binds the thirty States of this confederacy (and it is hoped indissolubly) together, replied : " *No question* was made in that case as to the *jurisdiction ;* it passed *sub silentio,* and the Court does not consider itself bound by that case." This breathes the true spirit of morality and of constitutional liberty ; one wrong is not to justify another ; one encroachment is not to justify a subsequent breach of that sacred instrument.

It has been attempted here to weaken the force of the decision of the Supreme Court of Alabama by saying, that at one time it was constituted as our's is now—that then *pro forma* decrees were common, and more approved ; but that since a separate Supreme Court has been established, it is disposed to restrain the practice. But there is nothing in that case to justify the remark ; it is unworthy of the reputable Court of whom it was made. The language of the Constitution means the same thing, whatever plan may be adopted for the organization of the Courts, and so I have no doubt that learned Court would hold.

The reason alleged for bringing the case up in this form is, that the judge who made the *pro. forma* decree shall not be disqualified from sitting or taking part on the trial or hearing of the case in this

Court, so as to secure here a full bench and prevent delay; and it has been urged upon us with great zeal and eloquence, by the learned counsel who argued this question on behalf of the appellants, that if this practice shall not be sustained, great inconvenience will result; and I feel the full force of the argument, can see the apparent evil, and should most sincerely regret that such a consequence should ensue; but if I was fully satisfied that there was no constitutional objection in the way of the exercise of this jurisdiction, I should have no doubt that the judge who made the decree could not rightfully sit on the trial or hearing of it in this Court. That a case must either be decided, or not decided, appears to me as clear and strikes my mind with as much force as any problem in Euclid. If the case is decided, then it must have been decided by the judge who pronounced the decree in the Court below, and the Constitution says, he "shall not sit as judge or take part in this Court on the trial or hearing of it." This is a plain, clear, *constitutional prohibition*. It is said that this is for the benefit of the party, and he may waive it; but can a judge waive a constitutional prohibition? It is not for me to discuss the reasons which may have caused the insertion of this prohibition in the Constitution. I can imagine several, and one much more forcible and much more deeply seated in the very nature of man, than the mere fact that the judge, because he had decided the cause in the Court below, might feel an interest in having his judgment affirmed. It is not to be presumed that the members of the Convention thought that the General Assembly would elect men to fill the high and responsible offices of judges, who possessed so little of that high disinterestedness, that noble magnanimity, which ought to characterize him who is clothed with "the judicial ermine," as to entertain a feeling so wholly inconsistent with his high position. Whatever reasons may have induced its insertion, it is sufficient for me that the people have spoken in their primary assembly; as Judge, it is my duty to obey.

"The judges (said the learned judge who pronounced the dissenting opinion in the case of Gadsden *v.* Jones, administrator, 1 Florida Reps., 348,) are not to *presume* the intentions of the Legislature, but to *collect* them from the words of the law, and *they have nothing to do with the policy* of the law,".citing Dwarris on Statutes, 703. Again: " Recently all the judges, and particularly the late present Lord Chief Justice, have manifested the strongest inclination to adhere more

closely in the construction of statutes to the *words* of the act of Parliament." "I have often lamented (says Lord Tenterden) that, in so many instances, the Courts have departed from the plain and literal construction of statutes relative to the settlement of the poor. Where the authorities are silent, I shall hold myself forced to construe the acts of Parliament according to the plain and popular meaning of the words." 2 B. & A. Dwarris ; and again, in another case, the same distinguished judge says : " The words may probably go beyond the intention ; but if they do, it rests with the *Legislature to make the alteration ;* the duty of the Court is only to give effect to the provision." " It is safer," said Mr. Justice Ashurst, " to adopt what the Legislature has actually said, than to suppose what they mean."— Again, citing Dwarris on Statutes, 707–'8, and 1 T. R., 52 : " Without saying how far I would, in all cases and under all or any circumstances, apply these principles to the construction of acts of the Legislature, as applicable to the construction of the Constitution, that great charter of our liberties, the fundamental law of the land, they have my most decided and cordial approbation, and I am not disposed to depart one jot or tittle from the rule which they prescribe in construing that important instrument, and more *especially in favor of a power to be exercised by myself."*

The *argumentum ab inconvenienti* is never to be applied, where the sense is clear, where there is no equivocal expression, where the words used admit of only one meaning. Attorney General *v.* Duke of Marlborough, 3 Madd., 540. Deane *v.* Clayton, 7 Taunt., 496. Fletcher *v.* Lord Sandes, 3 Bing, 590. 13 Eng. Com. L. Reps. Broome's Legal Maxims, 85.

" In construing an act of Parliament, if the words used by the Legislature in framing any particular clause have a *necessary* meaning, it will, according to the English authorities, be the duty of the Court to construe the clause accordingly, *whatever may be the inconvenience* of such a course." Turner *v.* Sheffield Railway Company, 10 M. and W., 434. Doe *ex dem.,* Governor of Bristol Hospital *v.* Norton, 11 M. and W., 928.

" No justice of the Supreme Court shall sit as judge or take part in the appellate court on the trial or hearing of any case which shall have been decided by him in the Court below." There is no equivocal expression in this clause ; the words used admit of only one meaning, and most clearly exclude the judge who decided the cause

from sitting or taking part in it in this Court.  So that the object in view, if the case was *decided*, could not be thus attained; if it has not been decided, if there has not in fact been a final decision, a *final decree* in the case, then, as we have before shown, no appeal lies.

The case of Charles *v.* The State, 1 Florida Reports, 298, 300, was a capital case; there was a verdict of guilty, but no final judgment had been entered.  The learned judge who tried the cause, entertaining a doubt as to the sufficiency of the indictment, had certified that matter to this Court, pursuant to an act of the Legislative Council of the late Territorial Government; the question was, whether this Court possessed jurisdiction of the case?  A strong and able appeal was made on behalf of the prisoner, but, after due examination and the most mature consideration, this Court held that it had not jurisdiction, and concluded its opinion in the following words: " The most prudent and safe course for a court of dernier resort, when a doubt about the power exists, is deemed to be to decline to act.  The exercise of doubtful powers by a court of the last resort is always extremely dangerous, and tends to excite alarm and distrust."  Such was the opinion of this Court at that time, and surely, if it was right and proper then, and in a case where human life was at stake, " *a fortiori*" it is so now, when we are called upon to extend, by construction of a plain, clear and unambiguous clause of the Constitution, our own powers.

In the case of Willis *v.* Shepherd, 2 Florida Reps., 399, this Court (the same learned judge of the Middle Circuit again delivering the opinion) said: " We consider it by far safer and more prudent, more in the spirit of the Constitution, and in harmony with the character of our institutions, to keep within the range and limits of a rightful jurisdiction, than to subject ourselves to the reproach of travelling beyond it, and exercising a doubtful and questionable power."

For the reasons above set forth, with the decisions of two most respectable courts of dernier resort directly upon the point, against the exercise of such jurisdiction, with no like case in favor of it, the question, it does seem to me, cannot rightly be said to be clear of doubt, and the power, I think, should not be exercised.

But if the right to exercise this jurisdiction were perfectly clear, the policy of doing it would, as this Court is constituted, be exceed-

ingly questionable. It being composed of four judges, the Court might be equally divided in opinion, and the result would be, that such decree, which in fact is, (and was intended by the Court below and the parties to be,) but " *a mere matter of form*," would, of course, stand, and the rights of the party against whom it was rendered be forever concluded by it, to his great and irreparable injury, and to the total subversion of every principle of justice and equity.

Without, therefore, imputing aught of blame to any one for the manner in which these cases were brought up to this Court, I am decidedly of opinion that they should be remanded to the courts below, from which they respectively came, for such proceedings to be had therein as to law, right and justice may appertain—not doubting but that all concerned in them, animated by those high sentiments of honor, morality and good faith, which should mark the conduct of all who are called to aid in the administration of those sublime principles, will be disposed at once, by consent and without delay, to place them in the same position which they would now have occupied, had not these *pro forma*, consent decrees been made.

Judge LANCASTER concurred fully in the foregoing opinion, and Mr. Justice HAWKINS gave his assent to the views and sentiments expressed in the last clause, as to the disposition of this and other causes brought up to this Court by appeal from *pro forma* decrees.

Opinion by Justice BALTZELL :

This and other cases have been brought to this Court on decrees made in the Court below, by consent and *pro forma*, to avoid the constitutional objection which disqualifies the Judge who made the decision in the Circuit, from sitting on the Supreme bench, thereby securing in the case a trial by all the justices, and in other cases to prevent the delay which would arise for the want of justices to try the case in this Court, owing to the inability of some of the other justices to preside, from having been counsel or otherwise concerned.

There being an equal division of the justices as to the right to entertain cases so situated, I proceed to announce the views by which I have been governed in arriving at the conclusion that the cases can rightfully and should be tried and disposed of. The objection is that the jurisdiction of this Court is appellate only ; that this matter not

having been decided by the Judge below, this Court would be exercising original jurisdiction to give a decision of itself. It is not perceived how the conclusion is arrived at that there was no decision : there is a decree final and conclusive between the parties, and so long as it remains, no farther action can be had on the subject. It is obviously, we think, *res adjudicata,* and whether made by consent, or *pro forma,* it is yet a decree. Can it be pretended that the case is now at issue and that the parties can proceed as if it had not been made ? Whether the Judge making such a decision or pronouncing such decree is competent to preside in the Supreme Court, under the clause of our Constitution declaring that " no justice of the Supreme Court shall sit as judge, take part in the appellate court, on the trial or hearing of any case which shall have been decided by him in the Court below," is another question and the one more appropriately resulting from the position of the case than the question presented. (For my part, I am free to declare that I feel no difficulty or embarrassment on either question. Even in the case of the Judge having decided the case below, I see no difficulty in his presiding, with the assent of the parties, in the Supreme Court. The provision is for the benefit of parties, and such an one as, in my opinion, they may very properly waive. It is a matter, so far as private rights or interests are concerned, in which the State has no interest, and the object was to give to the party a privilege of excepting to a judge on account of the bias proceeding from a prior decision, which he did not possess ; but if the party chooses to forego the privilege I see no reason why he should not be allowed to do so. A man may waive his objections to a juror, or select as arbitrators persons totally disqualified, and yet it is his own concern.) The very difficulty entertained by the counsel and court as to the mode of opening the decree, so as to leave the parties in their former position, shows that there has been a decision and that the case is not before the Circuit Court for trial. If so, where is it ?

Passing, however, this view of the subject, the enquiry arises, whether it is in violation of the Constitution to try a case so situate ? It is said to be so, because the jurisdiction of the Court is appellate and to decide these cases is to try them originally, as if in a court of original jurisdiction. The clause in our Constitution is almost identical with that in the Constitution of the United States, and if the objection be tenable, we shall be able, by reference to the decisions of

that tribunal, always distinguished for the ability, the intimate ac-
-quaintance with and attachment of its members to the Constitution, to
ascertain and solve it. No court has had the intricate subject of ju-
risdiction so frequently before it ; being limited in its sphere of ac-
-tion its care has been from necessity always to keep within the range
of its powers. Every foot of ground from the commencement has
been contested, so that none understands the subject so well or has
defined it with such precision. An appeal, then, can most safely be
made to that Court, as embodying the sentiment and opinions of
American jurists upon this interesting question.

At an early period the Court through their Chief Justice, Marshall,
·in the case of Marbury *v.* Madison, declared as " the essential cri-
·terion of appellate jurisdiction that it revises and corrects the pro-
ceedings in a cause already instituted, and does not create that cause."
1 Cond. Rep. S. C., 283.

It can hardly be contended that any of these cases have been cre-
·ated in this Court by their institution here, or that, in case of their
affirmance or reversal, the decree or sentence of the Court would be
·carried into execution here. There has not been, nor was there,
any thing to be done originally here—no testimony to be taken—no
amendment of the pleadings. The cases, if tried, are to be tried up-
on the decree and action of the Court below. This being the gene-
ral rule and principle, let us see how far· in practice the Court has
·conformed to their doctrine by assuming or refusing to consider cases
situate like the present.

The case of the United States *v.* Tillotson came up as upon a bill
of exceptions taken to the opinion of the Court, upon a trial before a
jury upon the matters in issue, when, in reality, no trial was had, but
the case assumed this shape by the agreement of the parties, in order
to have the opinion of the Court upon certain questions of law. " We
must," say the Court, " consider the case exclusively upon principles
applicable to it as upon a bill of exceptions taken at a real trial."—
The Court took jurisdiction and reversed the case. 12 Wheat., 180.

In Grant and others *v.* Raymond, a question was, whether the
Court would entertain the case as it came up from the circuit. Mr.
Chief Justice Marshall suggested that the case might be brought on
if the parties would agree that it should stand as if a judgment had
been given by the Circuit Court on the exceptions. The case, he
said, could not be heard on a difference in opinion of the judges of the

Court on a motion for a new trial. The counsel having agreed that the case should stand as suggested, the Court made the following order : " It is now here by the Court considered and ordered that this cause shall now be heard and decided as on a writ of error brought after verdict and judgment in the Circuit Court, on the exceptions taken in that Court ; that the causes hall now proceed as if judgment had been actually entered in the Circuit Court for the plaintiffs there, and the certificate in the case shall be taken, regarded and treated as a writ of error sued out by defendants below, and that the question shall be whether said judgment ought to be affirmed or reversed ; but that the Court will reserve its opinion till the defendants shall have sued a writ of error and a return, with a bill of exceptions," &c. 6 Peters, 221.

Another case more directly in point is that of Prigg v. the State of Pennsylvania. It was a writ of error to the Supreme Court of the State of Pennsylvania, to revise a judgment of that Court, as a case involving the construction of the Constitution and laws of the United States. Prigg was indicted in the Court of Oyer and Terminer, of York County, for forcibly taking away a negro woman, and a verdict was rendered against him. The case was removed to the Supreme Court of the State and the judgment affirmed *pro forma*, and the case was carried to the Supreme Court under the 25th section of the judiciary act of 1789. The judgment of the Supreme Court of Pennsylvania was reversed. 16 Peters, 609.

To appreciate the full force of this decision and its application to the present case it will be proper to refer to the action of the same Court on cases arising under the 25th section, showing the requisites to the vesting of jurisdiction as to them. In Armstrong and others v. the Treasurer of Athens County, the Court held " that to give the Supreme Court jurisdiction under that section, it must appear that a question involving the Constitution and laws of the United States was necessarily involved in the decision, and that the State court could not have given the judgment or decree which they passed, without deciding it." 16 Peters, 282.

At the same term the Court refused jurisdiction of a case under this section, although all objection was waived, saying " consent will not give jurisdiction, and we have on several occasions said that, when the act of Congress has so carefully and cautiously restricted the jurisdiction conferred upon this Court over the judgments and de-

crees of the State tribunals, it would ill become the Court to exercise it in a different spirit, and it certainly could not be justified in expressing an opinion favorable or unfavorable as to the correctness of this decree, when it has not the power to *affirm or reverse* it." Mills and others *v.* Brown, ibid., 526—7.

In the case of the United States *v.* Stone, the Court it will be seen say : "We are aware that in some cases, where the point arising is one of importance and difficulty and it is desirable, for the purposes of justice to obtain the opinion of this Court, the judges of the circuit have sometimes, by consent, certified the point to this Court as upon a division of opinion, when, in truth, they both rather seriously doubted than differed about it. We do not object to a practice of this description when applied to proper cases and on proper occasions.— But they must be cases sanctioned by the judgment of one of the judges of this Court in his circuit. A loose practice might render this Court substantially a court for the original decision of all cases of importance when the Constitution and laws intended to make it altogether appellate," &c.   14 Peters, 525.

These cases very conclusively show, we think, that in the opinion of the Supreme Court at least there is no objection to the exercise of jurisdiction in a case situate like the present, and certainly under circumstances less urgent and imperious. We might well be content to rely upon this authority.

Let us examine how the matter stood under the English law, which is more immediately an authority with us, than that of the Supreme Court itself. The mode of taking appeals under our law is provided for by the rules of practice in the courts of equity of the United States and, in case they are not applicable, by the practice of the High Court of Chancery in England.  Duval, 137.  In the rules adopted by the Supreme Court of the United States there is no provision for the taking of appeals, so that they and our statute also being silent, we must refer to the English practice. And here, I think, we shall find even less difficulty. According to the English practice a party had three modes of redress when aggrieved by a decree :— re-hearing before the same or another judge, appeal to the House of Lords, and bill of review. A re-hearing by the Chancellor of an order or decree made by the Master of the Rolls, or of the Vice Chancellor, is in part an appeal and governed in general by the same rules.  3 Daniel's Prac., 1602.  A case may be re-heard be-

fore the judge who heard it, or the Lord Chancellor, in which case it is generally termed an appeal although, in fact, it is only a re-hearing. 3 Daniel, 1617. A re-hearing before the Chancellor or the same judge, making the decree, opens the pleadings, and the cause is proceeded with exactly as if it were an original hearing. Ibid., 1627, 28, 29.

It is clearly not to this jurisdiction our laws can have an application as, very clearly, by the practice and general understanding, no new pleadings or proof can be adduced in the Supreme Court.

We have been referred to the case of Elmes *v.* Sutherland in the Supreme Court of Alabama, as decisive. The circumstances under which that decision was given are entitled to consideration ; the Supreme Court of that State is a separate tribunal and independent of the Circuit Courts, and there may be, and undoubtedly is, a propriety in each discharging its duty as designed by the Constitution and Laws of the State ; nor is it now the wish or design to encourage on the part of the Circuit Judges of this State an evasion of duty, but to provide for the exigency in which the loss of one Judge, by having made the decision below, will incapacitate the Supreme Court for action in the case. The Judge, too, who makes the *pro forma* decision below, does not avoid responsibility,. but actually assumes it, and a more responsible position in the Court above. We learn that it was the practice in that State, whilst a system like our own prevailed, to admit *pro forma* decrees. The same state of things also prevailed in North Carolina previous to the establishment of a separate Supreme Court. The decision in Alabama refers to the case of Brown *v.* Higgs, 8th Vesey 566, as authority on the subject, yet we find Lord Eldon to say : " Upon conversation with persons who are practised in courts of equity, it has been thought that in cases of this sort the court might formally affirm the judgment and suffer the cause to go to the House of Lords," &c. But he considered it contrary to the duty of a court so to act, as suitors had a right to the deliberate attention and judgment of every court in every stage in which, according to the Constitution, the cause may proceed, &c. Brown *v.* Higgs. Now the objection here is not as to the power or right of the Court to make a *pro forma* decree, but to its impropriety, an objection by no means applying to the cases before us, as the parties themselves ask us to adopt this course as the better means of attaining their rights. The learned Judge spoke of the practice as being

different to his ideas of right; but suppose the necessity of the case and the certain failure and denial of justice, had been presented to him, can it be supposed that he would have hesitated, or even that the Alabama Court would have refused, under like circumstances?

But there is another view of this case in our judgment no less conclusive. Appeals from decrees in chancery are regulated by the practice of the Court of Chancery in England, there being nothing in our laws, nor in the rules of the Supreme Court of the United States, adopted by our laws (with the single exception that the appeal shall be taken within two years,) to prescribe the mode of taking the same. From an opinion delivered by the late Judge Baldwin, exhibiting a masterly analysis of this subject, we find the appellate power (that of courts of chancery,) is an assumed one, from the necessity of the case, being neither conferred nor regulated by statute. It may and has been exercised according to the exigency of the case and time as either may call for the adoption of new rules or orders which partake more of the character of legislation than the mere regulation of the forms and modes of proceeding in the practice of the courts. 4 Bridg. Eq. Dig. 50 pl. 49. Not restrained by any act of Parliament they permit or prohibit the action of courts of equity in cases appealed from according to their discretion. Appendix 777. 9 Peters 777.

It has been supposed that the general law regulating the mode of suing out writs of error and prosecuting appeals was applicable to cases in chancery, but we do not think so; it is true the term decree is used, but this of itself would not embrace them any more than the use of the word judgment in an act regulating chancery proceedings would include cases at law; the fact is that the terms judgment and decrees are in some respects treated as synonimous by the Legislature. Independent of this, there is such a contradiction between this law and the law as to proceedings in chancery, as to forbid the construction contended for. Besides, the law allowing two years for appeals evidently showed the consideration of the Legislature that they stood on a different footing. And, indeed, under that view, if a party in chancery failed to appeal within ten days he would have been remediless.

This Court has already exercised the power of making rules for the practice in the Chancery cases.

It is said, however, that the judgment to be pronounced by this

Court in these cases would not be conclusive, nor of binding efficacy. If such a result were to follow, undoubtedly the Court should not hesitate to refuse the jurisdiction. But we have not apprehended any such consequence.

This Court itself, in Ponder *v.* Moseley, quoting the authority of the Supreme Court of the United States in Voorhees *v.* Bank of the United States, 10 Peters, 474, says : " The line which separates error in judgment from the usurpation of power is very definite and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate Court or may be declared a nullity collaterally, where it is offered in evidence in an action concerning the matter adjudicated or purporting to have been so." 1st Florida Reports, 267.

In the case of Parkhill's administrators *v.* the Union Bank, the jurisdiction of the Superior Court of the Territory was considered by the Supreme Court, at the January term, 1846, under the following circumstances : The Union Bank obtained a judgment against persons who had been, by the same Court, at a time prior to its date, removed from the office of administrators. In reference to this removal the Sup. Court say : " *eo instanti* the letters of administration were taken from her and annulled she became as to the suit *civiliter mortuus.*" Sentiments to the same effect, declared by the Sup. Court of the United States, were quoted with approbation in the following language : " By his [Savage's] removal from the office of executor, he was as completely separated from the business of the executor as if he had been dead, and had no right to appear in or be a party in this or any other court, to a suit which the law confided to the representative of the deceased." Again : " Could an execution have correctly issued on the judgment against the defendant ? It could not not have been issued against the estate in the hands of M. A. Parkhill, because there was no such character in existence," &c. The Supreme Court of the United States, in the case of Savage, also had said "the execution on the decree was unauthorized and void, and no right of property will pass by a sale under it, if one be made by the Marshal." Florida Reps., 127—130. 1 Howard, 282. 17 Peters, 224.— At the last term of the Court, in a very elaborate opinion delivered by the Chief Justice, it was asserted as an " essential principle of natural justice that every man have an opportunity to be heard in a court of law, upon every question involving his rights or interests, before he

is affected by any judicial decision of the question." Again : " No court is authorized to render a judgment or decree against any one or his estate, until after due notice by service of process to appear and defend." Although this was a case of attachment against a steamboat, and such vessels and ships, by the maratime law, every day are held to pass by constructive notice all over the world, still the doctrine of strict notice at the common law was held applicable to them, and an act of the Legislature of the State was held uncon-stitutional allowing judgment and other proceedings in the first in-stance against the boat. Flint River S. B. C. *v.* Roberts and others, Reports 1848, p. 113.

The judgment rendered in the case of the Union Bank *v.* Parkhill's administrators came again for consideration before the Court at the last term, in a suit between Ponder and Moseley, and it was then held that the Superior Court had jurisdiction to give judgment so as to bind the estate of Parkhill—that the judgment was a valid one, and that a sale under execution by the Marshal passed the right of prop-erty to the purchaser. Ponder *v.* Moseley and others, adm's, Reports 1848, p. 267.

But this Court on two occasions, at their sessions of 1847 and 1848, has given an express and direct sanction to the consideration of decrees taken *pro forma.* In Bluett *v.* Nicholson, decided in 1847, the question of jurisdiction was presented in another aspect, on an application to the Court to decide a question not presented by the pleadings, which was refused. 1 Florida, 384. The case of Le Baron, &c. *v.* Fauntleroy, was a case of importance, as well for the amount involved, as the delicate and interesting questions presented ; it was argued with great ability ; even new proof was adduced, yet no one suggested the want of jurisdiction. Florida Rep., 1848, 293.

At the present term, in the case of Edwards *v.* Moseley, the case as presented in the Court below was varied, by the introduction of new facts, yet the point of jurisdiction was not raised, although un-questionably presenting an exercise of direct original action by the appellate court.

It is said that the question of jurisdiction is a delicate one, and the old maxim is quoted that consent cannot give jurisdiction. The force of both expressions, it is conceived, is misunderstood. By the first, I understand that a Court will hesitate to embrace within their juris-diction cases, or questions, or persons not rightfully the subjects of

it—for instance, a State Court would be careful not to take cognizance of cases exclusively pertaining to the United States Courts, or other courts, or of persons subject to their jurisdiction alone. It is in this sense, the remark was used by the Supreme Court at their first term, in the first opinion ever pronounced by this Court. Stewart *v.* Preston, 1 Florida Rep., 1. But the fact is, that as well this expression as the maxim itself, is more appropriate to the Courts of the United States than to the State Courts; for as to the latter, the jurisdiction is always implied, being courts of general jurisdiction, and in them consent will give jurisdiction. Beatty *v.* Ross. Without insisting on this, the language of all courts without exception is to *amplify remedies*, and without usurping jurisdiction, to apply their rules to the advancement of substantial justice.

The principle, then, upon which our courts of law act is, to enforce the performance of contracts not injurious to society, and to administer justice to a party who can make that justice appear, by enlarging the legal remedy, if necessary, in order to attain the justice of the case. Broom's Legal Maxims, 36.

The construction of the judiciary of the State gives facilities for the promotion of justice, by having the same judges to preside in the Circuit and Supreme Court, not possessed where these are separate tribunals. Does it not, then, become a duty so to exert the judicial power, arising from this source, as that public justice will be most effectually promoted.

For my own part, having undertaken to discharge the high public trust of administering justice, as provided by the Constitution, without sale, denial, or delay, I am not for regarding exceptions to its performance, existing rather in the letter than the spirit. I have no fear that a judgment of our's will be reversed by another tribunal, or that it will be set aside as a nullity by another court. Surely with the precedents from the Supreme Court of the United States—those in this Court expressly to the point—the implied jurisdiction asserted in Moseley *v.* Ponder, where judgment was given in a case where there was no defendant before the Court—certainly there can be no question as to the jurisdiction. A motion has been made to withdraw the case, and send it back to the Circuit Court. To this, I cannot give my consent. In my opinion, it is rightfully here, and can only be rightfully disposed of by a decision of the case. I would as.

soon consent to have any other case taken from the docket, and sent back without trial.

Justice HAWKINS concurred in the foregoing opinion delivered by Judge BALTZELL—not assenting to the view expressed in the last clause.