Mr. Justice Smith
delivered the opinion of the court.
This was an action of assumpsit brought in the circuit court of Madison, on the promissory note of the plaintiffs in error. The note was given to secure, in part, the purchase-money of a tract of land sold by McGimpsey, the nominal plaintiff below, to Wiggins, one of the plaintiffs in error, in 1839. The defence set up was a failure of consideration. It appears that Wiggins was let into the possession of the land, and continued to hold it until after a resale to McGimpsey, or a rescission of the contract for the purchase and sale, when he returned the possession to the latter. Before this occurrence, McGimpsey had transferred the note in suit to the Branch at Canton of the Commercial Bank of Natchez. This fact was known by Wiggins, and when the sale Was rescinded, or the land resold, it was understoood that McGimpsey was to take up the note then in' the possession of the bank. At the date of the sale, a judgment lien existed on the land, which was sold by the sheriff under an execution which issued on the judgment; but the sale was not made until after Wiggins had given up the possession, as above stated. It is uncertain, from the testimony, whether there was a conveyance by deed of the land to Wiggins, or whether there was only a bond for titles made by McGimpsey. We are uninformed by the testimony as to the character of the covenants of the parties, whether they were dependent or independent; and it is wholly silent as to whether Wiggins purchased with or without a knowledge of the existing defects of the vendor’s title.
Upon this state of facts, the court, at the instance of the plaintiffs, charged:
1. “ That if the jury believe, from the evidence, that the note sued on was given by Wiggins for land purchased of McGimpsey, and that the former went into possession and continued in possession until the resale to McGimpsey, and that said note was transferred to the bank before said resale, and that fact was known by Wiggins at the time, there was on that account no failure or want of consideration.”
To this instruction it is objected, that it assumes as a fact *538 established or admitted, that there was a resale of the land, and not a simple rescission of the contract by the Vendor and vendee. Hence it is argued that the charge was calculated to mislead, by assuming that to be true which it was the exclusive right of the jury to decide by the evidence before them. There was evidence of a resale by Wiggins, derived from his own statements; but it was immaterial in the aspect of the case to which the principle of the charge was applied, whether there had been a resale of the land, or only a rescission of the contract for the purchase and sale; for if the note was founded on a sufficient consideration, the rights vested in the bank by the transfer, with the knowledge of Wiggins, could not be affected by either a rescission of the contract for the sale of the land, or a resale by the vendee to the vendor, after the transfer. Hence there, was no error in this instruction.
2. “That if the jury'believe, from the evidence, that there was a judgment against McGimpsey of older date than his deed or bond to Wiggins, a sale made by virtue of such judgment does not work a failure of consideration, (in the note,) but there must also be an eviction by title paramount.”
Where a vendee is in possession of land under a deed with covenants of warranty, he will not be permitted, in an action at law, to resist payment of the purchase-money on the ground of failure of consideration arising from defect of title in his vendor, unless there has been an actual eviction. Hoy et al. v. Taliaferro, 8 S. & M. 727. In cases of this character it is also settled that a sale by the sheriff, under execution, of the land, or a voluntary abandonment of the premises, is not equivalent to an actual eviction. Ib. 741. These are the settled rules where the contract of sale has been executed by a deed of conveyance warranting the title, but the instruction goes farther and embraces cases where the vendee is in possession under an unexecuted contract, holding only a bond for titles upon the payment of the purchase-money, or on the performance of some other condition.
When the vendee is in possession of land under a contract, the covenants of which are concurrent and dependent, or *539 where the undertakings of the parties are independent, if the vendee shall tender the purchase-money, or offer to perform his part of the contract, the defect of title in the vendor, ór his incapacity to make a good and operative conveyance, will constitute a good defence in bar of the action for the recovery of the purchase-money, although there has been neither sale under execution, nor eviction of possession. Peques v. Mosby, et al. 7 S. & M. 340; Robb v. Montgomery, 20 Johns. R. 20; Sage v. Ranney, 2 Wend. R. 534.
Hence this instruction was too broad as applied to the facts of this case. It necessarily excluded all inquiry on the part of the jury in regard to any defect in the title, or want of title in Mc-Gimpsey, unless there was also proof of an actual eviction.
The proposition contained in the first instruction requested by the defendants, was, that a failure of consideration in the note was produced by means of the sale of the land by the sheriff, and the conveyance to his vendee, made under the judgments against McGimpsey, which existed at the time of his sale to Wiggins.
The judgment liens against the land, existing at the time of the sale, did not necessarily cause a failure of consideration in the note. If the vendor was able to make a title at the time appointed in the contract, an existing incumbrance at the time of the sale could not be set up as a failure of consideration, and this would be the case if the purchase were made without notice of the incumbrance. But here, according to the case of Phillips v. Lane, 4 How. 122, as the incumbrance existed by judgment, the vendee is presumed to have purchased with notice of the defect in his vendor’s title; nor will the sale by the sheriff destroy the consideration of the note. It was shown by the evidence that the contract had been rescinded, or that the land had been resold to the vendor, after the transfer of the note to the bank, with a knowledge of that fact by the vendee. The sale and conveyance of title, therefore, by the sheriff, could not affect the consideration of the note. If it was void, it was void for some other reason than the sale of the land, to which the vendee held no claim, and by which he could in no wise be affected. Hence this instruction was correctly withheld.
*540 The second instruction requested by defendants, and which was also refused, is to the following effect: If the note in suit was given for the price of the land sold by McGimpsey to Wiggins, and there had afterwards been a rescission of the contract of sale by the vendor and vendee, and an agreement by the vendor that the purchase-money should not be paid, entered into, before Wiggins had notice of the transfer of the note to the bank, Wiggins was discharged from liability.
The truth of the principle embraced in this instruction will not be controverted. If the contract for the sale and purchase of the land were rescinded by the parties thereto, and an agreement entered into, that the vendee should not be required to pay the notes given for the purchase-money, which was equivalent to a release, before he had notice of the transfer, it is clear that such rescission and agreement constituted a good defence to the action. It is not, however, every refusal to state legal principles to a jury, however true they may be as abstract doctrines of the law, which will be decided to be error. Instructions should be applicable to the facts, and pertinent to the questions raised by the evidence. If they are not, they should be refused, although they may present the clearest principles of law. 3 How. 143, 388.
In the case under examination, there was no evidence which tended to show that the rescission or resale occurred before Wiggins had notice of the transfer of the note. • On the other hand, the evidence is distinct that Wiggins was informed of the transfer, at the time of the rescission of sale. But if it be conceded that the court erred in refusing this instruction, the question is presented whether for this error, and the erroneous charge given at the instance of the plaintiff, the verdict ought to be disturbed. We think it should not. It was correct according to the law and the facts.'
■ The execution and delivery of the note to McGimpsey raised the presumption that it was made upon a sufficient consideration. To prevent a recovery, it was incumbent on him to establish a failure of the consideration.
It is uncertain from the evidence whether Wiggins took a bond *541 for titles, or received a deed for the land; or whether he took the precaution to secure himself by any covenants whatever.
There was no evidence that he had actual notice of the judgments against McGimpsey; but by implication of law he was a purchaser with notice of the existing incumbrances. 4 How. 128; 12 Wheat. 180. It is well settled, that a purchaser who buys with a full knowledge of the defects in- the title of his vendor, cannot be relieved from his obligation to pay in consequence of such defects. 3 A. K. Marsh. 288; 13 S. & R. 386 ; 5 How. 284. Hence the judgment liens existing at the time of sale, furnished no defence against the payment of the note. Nor was he placed in a better condition to defend by the execution sale. For antecedent to the sale made by the sheriff he had resold the land to his vendor, or had rescinded the contract for the purchase, with full knowledge of the fact that the note had been previously transferred, and was then in the hands of a bona Jide holder. By either the rescission or resale, he was divested of all interest in the land, which was invested in McGimpsey. Hence the execution sale of the land, as the property of the latter, could not affect the title of Wiggins-; and therefore did not defeat the consideration of the note.
Moreover it is shown by the evidence, that, at the time when the contract for the sale of the land was rescinded, it was the understanding of McGimpsey and Wiggins that the former should take up the note, then in the hands of the bank, and restore it to the latter. This was a recognition of the validity of the note by Wiggins, and evidence that he relied on McGimpsey for the payment of it.
Judgment affirmed.